[Cite as *State v. Palmer*, 2022-Ohio-2181.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-07-035 |
| | : | O P I N I O N |
| - vs - | | 6/27/2022 |
| | : | |
| PHILLIP A. PALMER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020-CR-00008

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Law Offices of William J. Rapp, and Joshua R. Crousey, for appellant.


**PIPER, P.J.**

{¶1} Appellant, Phillip Palmer, appeals his conviction and sentence in the Clermont County Court of Common Pleas for felonious assault with a firearm specification.

{¶2} On December 19, 2019, Nick Young was in downtown Cincinnati attending an office Christmas party consuming beer or other alcoholic beverages. The party began around noon and moved to different locations throughout the day. In the early evening, Young arrived at the downtown Cincinnati Jack Casino where he exhibited noticeable signs

of alcohol impairment.[1]  Pursuant to casino policy, Young was escorted from the casino and asked not to return for 24 hours.  Thereafter, a casino employee signaled to a nearby taxi stand and Palmer pulled his cab forward to drive Young home.

{¶3}  Palmer testified that when Young entered the cab, Young's speech was slurred and difficult to understand; however, Palmer understood that Young needed to go to Moscow, Ohio.  Young admitted to being in and out of consciousness during the trip. Following a detour, Palmer started driving along US Route 52 through New Richmond to Moscow.  Once they arrived in Moscow, Palmer claims to have called out "Moscow, sir" twice, but Young was unresponsive.  Palmer then continued driving down the road until he was near Ripley, Ohio, a significant drive east of Moscow.  At some point in time, Palmer announced their location, which caused Young to wake up.  Young then saw the meter showed a fare of $170.00.  Realizing where they were and how far past his home they had gone, Young suspected that Palmer was trying to take advantage of him.  Palmer testified that Young told him "I'm not paying that" and demanded that he drive back towards Moscow.

{¶4}  When they returned to Moscow, Young requested that Palmer stop at a Marathon gas station.  Young then exited the cab and entered the convenience store portion of the gas station.  Palmer admitted to being angry and decided to follow Young into the store where the two men began arguing about payment of the cab fare.  The gas station attendant requested that Palmer and Young leave the store through separate exits; however, the argument continued.  At some point, the attendant intervened by placing herself between them.  Palmer then yelled at the attendant and shoved her out of the way. Cletus Jones, another store patron, became concerned and confronted Palmer about shoving the female attendant.  Thereafter, Young asked Cletus if he could drive him the rest

---

1. Young's blood alcohol concentration was approximately .231 when tested later at the hospital.

of the way home for twenty dollars.

{¶5} Cletus agreed to drive Young home. Therefore, Young began walking towards the exit along with Cletus' son, Gregory Jones. Still, the confrontation between Palmer and Young persisted with arguments and back and forth pushing. Video evidence from the store shows that Palmer eventually stood between Young and the exit. Palmer was blocking the exit and assumed a fighting stance. Young allegedly called Palmer a "pussy" and pushed him into the storefront door at which time Palmer then exited the store and started walking back to his cab. Gregory and Young exited the store shortly thereafter.

{¶6} Gregory testified that he and Young were headed towards Cletus' truck when Palmer called out to Young that his cell phone was in the cab. After that, Gregory testified that Young turned around and starting walking towards the cab. Shortly thereafter, Gregory heard gunshots and saw Young drop to the ground. After shooting Young, Palmer fired his weapon a few more times in Young's general direction and fled the scene in his cab.

{¶7} Although there were gaps in his memory from that night, Young's recollection was consistent with Gregory's. That is, Young testified that he recalled walking towards Palmer's cab. He thought he saw Palmer reach for the cell phone that he left in the cab. However, Young explained that when he got closer, Palmer raised a firearm and shot him in the neck.

{¶8} The gas station attendant and Gregory both called 911 and the authorities issued an alert for Palmer's cab. Officer Frasier with the New Richmond Police Department later spotted Palmer's cab and conducted a felony traffic stop. Palmer was cooperative with Officer Frasier and told him about the firearm in the vehicle. He also told Officer Frasier that he had fired shots at another person, and they were "probably hurt." A subsequent search of the cab revealed that Palmer was still in possession of Young's cell phone.

{¶9} Resulting from this incident, Palmer was indicted on one count of attempted

murder and one count of felonious assault with firearm specifications on each count. The matter proceeded to a jury trial during which Palmer took the stand in his own defense. Palmer admitted to shooting Young in the neck, but claimed to have done so in self-defense. Although he did not observe Young with a weapon, Palmer claimed that he was sitting in his cab when Young raced towards the cab "faster than lightning." He claims that Young's sudden appearance made him "scared as hell" and that he was scared for his life. Furthermore, Palmer claimed that he was justified in shooting Young because Young had pushed him inside the gas station.[2] While Palmer denied calling Young over to his cab to retrieve his cell phone, he could not explain how Gregory knew that Young's cell phone was in the cab. Instead, Palmer suggested that Young and Gregory had fabricated their claims about Palmer calling to Young about his cell phone and that Young was walking, rather than running, towards the cab in order to retrieve it.

{¶10} Following the close of evidence, the trial court found that Palmer was not entitled to a self-defense instruction. The jury ultimately found Palmer guilty of felonious assault with an accompanying firearm specification. The jury found Palmer not guilty of attempted murder. The trial court sentenced Palmer to an indefinite prison term of five years to seven and one-half years. In addition, the trial court imposed the mandatory, consecutive three-year prison term for the firearm specification. Palmer now appeals, raising four assignments of error for review.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED BY NOT ALLOWING THE JURY TO CONSIDER SELF-DEFENSE.

{¶13} In his first assignment of error, Palmer argues the trial court erred by declining

2. Palmer testified that his mere pushing of the attendant inside the store would have justified her use of deadly force against him. This testimony reveals a skewed perspective of "self-defense."

- 4 -

to instruct the jury on self-defense. In so doing, Palmer claims that he presented sufficient evidence to justify a self-defense instruction and maintains that the trial court's decision not to provide the instruction was predicated on improper findings. Palmer's argument is without merit.

**Self-defense Instruction**

{¶14} When reviewing a refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal was an abuse of discretion under the facts and circumstances of the case. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989).

{¶15} Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder. *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus. Trial courts should ordinarily give a requested jury instruction if it is a correct statement of law, if it is applicable to the facts of the case, and if reasonable minds might reach the conclusion sought by the requested instruction. *State v. Jacinto*, 8th Dist. Cuyahoga No. 108944, 2020-Ohio-3722, ¶ 42, citing *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240.

{¶16} In this case, Palmer requested a jury instruction on self-defense pursuant to R.C. 2901.05(B)(1), which now provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused did not use the force in self-defense, * * * as the case may be.

{¶17} Under R.C. 2901.05(B)(1) there are two burdens. *State v. Davidson-Dixon*, 8th Dist. Cuyahoga No. 109557, 2021-Ohio-1485, ¶ 18. The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that

the defendant used the force in self-defense. *State v. Sturgill*, 12th Dist. Clermont No. CA2020-03-018, 2020-Ohio-6665, ¶ 19. The burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. *Id.* at ¶ 17. *Accord State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 24 ("the phrase 'tends to support' does not connote that a new standard should apply to the determination of whether a defendant is entitled to a self-defense instruction"); *State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848, ¶ 55; *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶18} In deciding whether to give a self-defense instruction, the trial court must view the evidence in favor of the defendant, and the question of credibility is not to be considered. *Davidson-Dixon* at ¶ 20; *State v. Estelle*, 3rd Dist. Allen No. 1-20-502021-Ohio-2636, ¶ 19. If there is conflicting evidence on the issue of self-defense, the instruction must be given to the jury. *Id.* However, "if the evidence generates only a mere speculation or possible doubt, the evidence is insufficient * * * and submission of the issue to the jury will be unwarranted." *State v. Melchior*, 56 Ohio St.2d 15, 20 (1978). A defendant's bare assertion that he acted in self-defense will be insufficient. Rather, the assertions must be coupled with supporting evidence from whatever source and of a nature and quality sufficient to raise reasonable doubt as to guilt. *Davidson-Dixon* at ¶ 18; *Jacinto* at ¶ 47.

**Self-defense**

{¶19} The elements of self-defense are cumulative and therefore self-defense is inapplicable to a defendant who fails to satisfy any one element. *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).[3] Significantly, in order to satisfy those elements, a defendant must

---

3. We note that the state challenges several aspects of Palmer's self-defense claim, including that Palmer was at fault in creating the situation. However, since the elements of self-defense are cumulative, we need not address each argument raised by the state. In this case, we focus on the clear failure to produce evidence tending to support one of the elements of self-defense. However, it appears the state rightfully challenges the same failure of evidence going to other elements of self-defense.

have a bona fide belief that he or she was in imminent danger of death or great bodily harm and his or her only means of escape from such danger was the use of such force. O.J.I. 421.19; *Sturgill* at ¶ 20.

**Analysis**

{¶20} On appeal, Palmer argues that he met his initial burden of providing evidence which tends to support his claim of self-defense. He therefore maintains that the trial court's refusal to issue a self-defense instruction was based on its determinations that: (1) Palmer's testimony was not credible, and (2) that Palmer had a duty to retreat but failed to do so.

{¶21} However, our review of the record sufficiently demonstrates that the trial court correctly determined self-defense was not applicable based upon the evidence. In the case sub judice, the evidence shows that Palmer and Young were in a confrontation in the store that had escalated from mere words to a minor physical confrontation, i.e., pushing and shoving. The confrontation appeared to end when Palmer and Young exited the store and started walking in opposite directions.

{¶22} However, the video evidence then shows that Young turned around and started walking towards Palmer's cab. The state presented evidence that Young did so because Palmer had called out to Young about his cell phone. Palmer denied doing so. Instead, Palmer claimed that he was sitting in his cab when Young quickly approached "faster than lightning." Young was nearly at Palmer's cab when Palmer raised his .44 caliber revolver and shot Young in the neck. Palmer claims to have done so because he feared for his life.

{¶23} Although Palmer claims to have acted in self-defense, the record reveals his claims are only supported by his bare assertions with no supporting evidence to raise any reasonable doubt as to guilt. *State v. Voss*, 12th Dist. Warren No. CA2006-11-132, 2008-Ohio-3889, ¶ 56 (trial court did not err where there was no evidence to support a self-

defense claim outside of the defendant's self-serving statements). The fact that this altercation with Young had escalated from mere words to pushing and shoving did not mean that Palmer was in imminent danger of death or great bodily harm. *See State v. Ray*, 12th Dist. Butler No. CA2012-10-213, 2013-Ohio-3671, ¶ 31. Even if Young reapproached Palmer's cab quickly, or "faster than lightning," there is no evidence to suggest that he posed any reasonable threat of imminent danger of death or great bodily harm. In this regard, Palmer's claims that he acted in self-defense were merely speculative and unmoored from any reasonable fear justified by the circumstances.

{¶24} Moreover, the evidence adduced at trial demonstrates that Palmer used excessive force in shooting Young. In this case, there is no evidence that Young was in the possession of any weapon or other instrumentality that could be used to cause death or great bodily harm. The record demonstrates that the parties had only been involved in a minor physical altercation involving pushing and shoving. There is no evidence of any injuries from the altercation in the store. Nevertheless, Palmer used deadly force when he was not faced with deadly force. *Sturgill*, 2020-Ohio-6665 at ¶ 26 (defendant used excessive force by stabbing the victims during a fistfight). As we held in *Sturgill*, a defendant is simply not entitled to a self-defense instruction where the evidence demonstrates the use of excessive and disproportionate force. *Id.* at ¶ 26-27.

{¶25} Finally, we note that Palmer also claims that the trial court improperly found that he had a duty to retreat.[4] In so doing, Palmer cites portions of the record where the trial court discussed alternative means—short of using deadly force—available to Palmer. He then argues that this conflicts with the amendments to R.C. 2901.09, which provides that a person has no duty to retreat if in a place where one lawfully has the right to be. R.C.

---

4. Effective April 6, 2021, a person has no duty to retreat if in a place where one lawfully has the right to be. R.C. 2901.09.

2901.09. However, when considered in context, the trial court was discussing Palmer's excessive and disproportionate response in using deadly force under the circumstances. Furthermore, since self-defense was inapplicable to this case regardless of the potential absence of a duty to retreat, Palmer cannot demonstrate prejudice. *State v. Claytor*, 8th Dist. Cuyahoga No. 110837, 2022-Ohio-1938, ¶ 81-83.

{¶26} Based on the facts presented, there was no reasonable, justifiable, or bona fide fear to support Palmer's bare assertions of self-defense. Furthermore, there is no doubt that shooting Young in the neck with a firearm in response to a minor altercation was unreasonable, excessive, and disproportionate under the circumstances. Accordingly, we find that Palmer was not entitled to a self-defense instruction and the trial court did not err in denying Palmer's request for such an instruction. Palmer's first assignment of error is overruled.

{¶27} Assignment of Error No. 2:

{¶28} THE JURY ERRED BY FINDING APPELLANT GUILTY WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION.

{¶29} Assignment of Error No. 3:

{¶30} THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶31} In his second and third assignments of error, Palmer argues that his conviction is based on insufficient evidence and the jury's verdict was against the manifest weight of the evidence.

{¶32} The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Wright*, 12th Dist. Butler No. CA2012-08-152, 2014-Ohio-985, ¶ 10. Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19. "Because sufficiency is

required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶33} A manifest weight challenge scrutinizes the proclivity of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶34} Felonious assault is defined in R.C. 2903.11, which states "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." R.C. 2903.11(A)(2). A firearm specification allows for an additional three-year prison term if the state proves that the "offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." R.C. 2941.145.

{¶35} In these two assignments of error, Palmer couches his arguments in terms of self-defense. However, as discussed above, Palmer was not acting in self-defense when he shot Young in the neck. Therefore, to the extent that Palmer argues that the jury's verdict was improper based upon a theory of self-defense, our resolution of Palmer's first assignment of error resolves that argument. To the contrary, the evidence firmly established that Palmer knowingly used a deadly weapon to cause physical harm to Young.

Furthermore, there is no dispute that the .44 caliber revolver Palmer used to shoot Young was both a "deadly weapon" and a "firearm" as relevant to the offense and the specification. R.C. 2923.11. *See State v. Hollie*, 12th Dist. Butler Nos. CA2021-03-025 and CA2021-04-033, 2022-Ohio-872, ¶ 32 (discussing the differences between a "firearm," a "deadly weapon," and a "gun"). Accordingly, we find Palmer's conviction for felonious assault with an accompanying firearm specification is supported by the manifest weight of the evidence. This means that Palmer's conviction is also supported by sufficient evidence. Therefore, Palmer's second and third assignments of error are without merit and are overruled.

{¶36} Assignment of Error No. 4:

{¶37} THE TRIAL COURT ERRED BY SENTENCING APPELLANT ACCORDING TO THE REAGAN TOKES LAW.

{¶38} In his fourth assignment of error, Palmer argues that the Reagan Tokes Law is an unconstitutional violation of the separation of powers doctrine because it allows the executive branch to exercise powers reserved to the judiciary. He also argues that the Reagan Tokes Law violates his due process rights.

{¶39} However, this court has previously found that the Reagan Tokes Law does not violate the separation-of-powers doctrine. *E.g., State v. Suder*, 12th Dist. Clermont Nos. CA2020-06-034 and CA2020-06-035, 2021-Ohio-465, ¶ 25; *State v. Henderson*, 12th Dist. Warren No. CA2020-11-072, 2021-Ohio-3564, ¶ 12.

{¶40} Furthermore, this court has repeatedly determined that the Reagan Tokes Law does not violate an offender's due process rights. *Id.* at ¶ 14; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, at ¶ 17 (the Reagan Tokes Law "does not run afoul of an offender's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution"). Therefore, Palmer's fourth assignment of error is overruled.

{**¶41**}  Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.