[Cite as *State v. Dearmond*, 2024-Ohio-393.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

**STATE OF OHIO,**                                        **CASE NO. 8-22-41**

    **PLAINTIFF-APPELLEE,**

    **v.**

**DEVON L. DEARMOND,**                          **O P I N I O N**

    **DEFENDANT-APPELLANT.**

**Appeal from Logan County Common Pleas Court**
**Trial Court No. CR 20 01 0002**

**Judgment Affirmed**

**Date of Decision:  February 5, 2024**

**APPEARANCES:**

    *Christopher R. Bucio* **for Appellant**

    *Sarah J. Warren* **for Appellee**

**MILLER, J.**

{¶1} This appeal, having been placed on the accelerated calendar, is *sua sponte* being assigned and considered on the regular calendar pursuant to Loc.R. 12(1). Under the authority of Loc.R. 12(5), we have elected to issue a full opinion in lieu of a judgment entry.

{¶2} Defendant-appellant, Devon L. Dearmond ("Dearmond"), appeals the judgment of sentence of the Logan County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court.

*Facts and Procedural History*

{¶3} The case arises from an attempted drug transaction that resulted in Dearmond stabbing two people, Joseph Fuerst ("Fuerst") and Joshua Gamble ("Gamble"). On December 10, 2019, Fuerst and Josue Aldrete ("Aldrete") arranged to meet at a park in West Liberty, Ohio for Aldrete to purchase a quarter pound of marijuana from Fuerst for a sum of approximately $880. (Sept. 27-28, 2021 Tr. at 127, 190, 234-235, 394). At the appointed time, Gamble drove Fuerst to the meeting location where they waited for Aldrete to arrive. (*Id.* at 277). Shortly thereafter, Aldrete arrived at the meeting location with three friends also in Aldrete's vehicle— Dearmond, Damiyr Dyson ("Dyson") and Brandon Fowler ("Fowler"). (*Id.* at 398). Aldrete and Dearmond exited Aldrete's vehicle and, at Fuerst's direction, got into the backseat of Gamble's vehicle to complete the transaction. (*Id.* at 395-396).

-2-

**{¶4}** Shortly thereafter, Fuerst, Gamble, Aldrete, and Dearmond got into a disagreement about the logistics of how the transaction would proceed with both sides claiming that the other side was trying to shortchange the other. Fuerst and Gamble claimed that Dearmond refused to tender the money for the transaction, and Aldrete and Dearmond contended that Gamble, who was holding the baggie of marijuana, refused to let go of the bag. (*Id.* at 148-149). The argument escalated and, at some point, Aldrete summoned Dyson and Fowler, who were waiting in Aldrete's car, to Gamble's vehicle, where the argument was taking place. (*Id.* at 129, 148, 223, 225, 247-248). Dyson and Fowler approached the vehicle and attempted to deescalate the situation by encouraging Aldrete and Dearmond to abandon the transaction, but Aldrete and Dearmond chose not to heed their advice. (*Id.* at 148, 247-248).

**{¶5}** The disagreement eventually turned physical. At trial, the participants offered different, and sometimes conflicting, accounts of the events that transpired. According to Fuerst and Gamble, after it became clear the transaction was not going as planned, they ordered Dearmond and Aldrete to exit the vehicle so they could go their separate ways. (*Id.* at 128). Then, Dearmond brandished a pocket knife and held it beside Fuerst's headrest. (*Id.* at 128-129). Fuerst alleged Dearmond threatened that if they did not give him the marijuana, he would stab Fuerst. (*Id.*). Then, Aldrete "[made] a jump" toward Gamble in the driver's seat and attempted to grab the baggie of marijuana out of Gamble's hoodie pocket. (*Id.* at 128-129). At

that point, the baggie ripped and marijuana dispersed throughout the vehicle. (*Id.*). Fuerst testified that he attempted to push Aldrete off of Gamble, and, was then stabbed repeatedly by Dearmond. (*Id.* at 129). Fuerst stated that, Dearmond was "swing[ing] the knife" and stabbing them while he and Gamble implored Dearmond and Aldrete to leave the vehicle. (*Id.*). Fuerst testified that while Dearmond was stabbing him, Gamble put the vehicle in drive and began driving away. (*Id.*). Gamble testified that he began driving and swerving in an effort to force Dearmond and Aldrete out of the vehicle. (*Id.* at 172). Eventually, Aldrete and Dearmond exited the moving vehicle, and Gamble and Fuerst drove to the hospital where they received medical attention for their injuries. (*Id.* at 172, 200-201).

{¶6} At trial, Dearmond took the stand and testified that an argument broke out and that, at some point, Fowler and Dyson were summoned to the vehicle to try to intervene. (Sept. 27-28, 2021 Tr. at 403). Dearmond admitted Fowler and Dyson encouraged Dearmond and Aldrete to "calm down" and "just forget the whole deal." (*Id.*). Dearmond acknowledged that, at that point, he recognized the transaction was not working out. (*Id.* at 403-404). Nevertheless, Dearmond stated that he continued to try to get the transaction to go through because "we didn't have that much weed and we wanted to go home and smoke [weed]." (*Id.* at 404).

{¶7} Dearmond admitted he brought the knife to the drug transaction that he used to stab Fuerst and Gamble. (*Id.* at 402-403). However, he denied he retrieved the knife from his back pocket until the car began to speed off. (*Id.* at 405-406).

Dearmond testified that, when the vehicle was in motion, he used the knife to defend himself and force Fuerst and Gamble to let him out of the vehicle. (*Id.* at 407).

**{¶8}** On January 14, 2020, Dearmond was indicted on four counts: Count One of attempted murder in violation of R.C. 2923.02(A), (D) and R.C. 2929.02(B), a first-degree felony; Count Two of aggravated robbery in violation of R.C. 2911.01(A), (C), a first-degree felony; and Counts Three and Four of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), against Fuerst and Gamble respectively, second-degree felonies. Dearmond appeared for arraignment on January 17, 2020, where he entered pleas of not guilty. That same day, Dearmond's retained trial counsel filed a notice of appearance.

**{¶9}** On July 9, 2020, the State filed a motion requesting the trial court dismiss the case. That same day, the trial court granted the State's motion and dismissed the case without prejudice.

**{¶10}** On January 12, 2021, the Logan County Grand Jury indicted Dearmond on five counts. Counts One through Four were consistent with the initial January 14, 2020 indictment. Count Five charged Dearmond with tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. At the arraignment held on January 19, 2021, Dearmond entered not-guilty pleas to the charges in the indictment. Additionally, the trial court appointed Dearmond's previously retained trial counsel to represent Dearmond. On March 10, 2021,

Dearmond's appointed trial counsel filed an amended notice of appearance of counsel which indicated that he had been retained as attorney of record.

{¶11} On September 17, 2021, the State filed a motion to dismiss Count Five of the indictment, which the trial court granted. A jury trial was held on September 27-28, 2021. At the conclusion of the trial, the jury returned verdicts of not guilty on Counts One and Two (attempted murder and aggravated robbery, respectively) and guilty on Counts Three and Four (felonious assault). The trial court accepted the verdicts and found Dearmond guilty of Counts Three and Four and ordered a presentence investigation.

{¶12} At the sentencing hearing held on November 2, 2021, the trial court sentenced Dearmond to an indefinite term of six to nine years in prison on Count Three and a definite term of six years in prison on Count Four to be served concurrently. That same day, the trial court filed its judgment entry of sentence. On November 4, 2021, the trial court filed a nunc pro tunc entry indicating that because the victims' request for restitution had not yet been addressed, the judgment entry filed on November 2, 2021 was not a final appealable order.

{¶13} Nonetheless, on November 30, 2021, Dearmond filed a notice of appeal. On August 8, 2022, we dismissed Dearmond's appeal due to the lack of a final appealable order. *State v. Dearmond*, 3d Dist. Logan No. 8-21-43, 2022-Ohio-2324, ¶ 9-10. On December 5, 2022, the State filed a motion to withdraw its request for restitution. That same day, the trial court granted the State's motion. On

-6-

December 8, 2022, the trial court filed a final appealable order disposing of the issue of restitution.

{¶14} Dearmond filed his notice of appeal on December 19, 2022. He raises two assignments of error for our review.

**First Assignment of Error**

**Ineffective Assistance of Counsel.**

{¶15} In his first assignment of error, Dearmond argues he was denied the effective assistance of trial counsel. Specifically, Dearmond argues that his trial counsel, who was initially appointed by the trial court, was ineffective and behaved in an unethical manner by demanding private payment from Dearmond and his family in order to ensure trial counsel would work diligently on the case.

*Relevant Law*

{¶16} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the

defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶17} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

*Analysis*

{¶18} In support of his position that his trial counsel was ineffective, Dearmond argues that his trial counsel demanded money from Dearmond and his family to ensure diligent representation. Specifically, Dearmond argues that his trial counsel, who was initially appointed by the trial court, informed Dearmond and his father that "if they wanted him to work hard on the case, and wanted better work

out of him, then he would need to be retained as private counsel for the case, with a retainer of $10,000.00." (Appellant's Brief at 9). Dearmond claims that, following the dismissal of the case and subsequent refiling, Dearmond's trial counsel, who was once again appointed by the trial court, demanded an additional $10,000.00 to "work harder on the case" and "have [Dearmond] acquitted of all charges." (*Id.* at 9-10). In support of his assertions, Dearmond references two "affidavits"[1] signed by Dearmond and his father, Eric Dearmond, attached to Dearmond's appellate brief as Exhibit B and Exhibit C, respectively.

{¶19} "If an ineffective assistance of counsel claim concerns facts that are outside the record, we cannot consider the claim on direct appeal because we can only consider matters contained in the record." *State v. Hall*, 10th Dist. Franklin No. 04AP-1242, 2005-Ohio-5162, ¶ 60. When considering an argument raised on appeal, a reviewing court is limited to considering only the matters found in the record. *Volodkevich v. Volodkevich*, 48 Ohio App.3d 313, 314 (1989). Dearmond's arguments relating to the ineffective assistance of counsel rely on: (1) evidentiary materials outside the record on appeal, i.e., several documents attached to his appellate brief, and (2) statements made in Dearmond's appellate brief. In *State v. Hooks*, the Supreme Court of Ohio stated that "a reviewing court cannot add matter

---

[1] Although Dearmond's appellate counsel references Exhibit B and Exhibit C as "affidavits," we note the documents do not appear to have been made under oath and do not conform with the requirements of an affidavit. *See* R.C. 2319.02 ("An affidavit is a written declaration under oath * * *."); *State v. Quinn*, 2d Dist. Clark No. 2016-CA-64, 2017-Ohio-8107, ¶ 37.

to the record before it that was not a part of the trial court's proceedings." *State v. Hooks*, 92 Ohio St.3d 83 (2001). App.R. 9 governs the record on appeal and provides in pertinent part: "The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases." App.R. 9(A)(1). "Evidence not made part of the record that is attached to an appellate brief cannot be considered by a reviewing court." *State v. Zhovner*, 3d Dist. Auglaize No. 2-12-13, 2013-Ohio-749, ¶ 11, citing *Deitz v. Deitz*, 3d Dist. Union No. 14-11-06, 2012-Ohio-130, ¶ 8. Additionally, the record cannot be enlarged by factual assertions in an appellate brief. *State v. Morrow*, 5th Dist. Muskingum No. CT2021-0053, 2022-Ohio-1089, ¶ 19. Accordingly, we disregard the documents and allegations in Dearmond's brief that were not part of the trial court record. Thus, the affidavits of Dearmond and his father, which form the basis of Dearmond's argument on appeal, cannot be considered in our review of Dearmond's assignment of error. *See State v. Hirschy*, 3d Dist. Allen No. CR2021 0439, 2023-Ohio-3204, ¶ 21. We likewise will disregard the factual assertions made in Dearmond's brief that are not supported by the record or that contain documents which were not first presented for the trial court's consideration and are not properly part of the record. Accordingly, we are unable to consider the merits of Dearmond's argument because it relies entirely on material outside the scope of our review. *See State v. Barnett*, 7th Dist. Jefferson

No. 06-JE-23, 2008-Ohio-1546, ¶ 130 ("When an allegation of ineffective assistance of counsel is based upon material that is not part of the record, the merits of the argument cannot be addressed.").

{¶20} Dearmond's first assignment of error is overruled.

## Second Assignment of Error

**Abuse of discretion.**

{¶21} In his second assignment of error, Dearmond argues the trial court erred by not giving the jury a self-defense instruction. For the reasons that follow, we disagree.

*Standard of Review and Relevant Law*

{¶22} "Trial courts have a responsibility to give all jury instructions that are relevant and necessary for the jury to properly weigh the evidence and perform its duty as the factfinder." *State v. Shine-Johnson*, 10th Dist. Franklin No. 17AP-194, 2018-Ohio-3347, ¶ 25. "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240. Yet, a trial court may refuse to issue a requested jury instruction if "'the evidence adduced at trial is legally insufficient' to support it." *State v. Juntunen*, 10th Dist. Franklin Nos. 09AP-1108 and 09AP-1109, 2010-Ohio-5625, ¶ 13, quoting *State v. Barnd*, 85 Ohio App.3d 254, 259 (3d Dist.1993). "[T]he trial judge is in the best position to gauge the

evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, ¶ 72. "To be justified, a jury instruction must be based on an actual issue in the case as demonstrated by the evidence." *State v. Cunningham*, 2d Dist. Montgomery No. 29122, 2023-Ohio-157, ¶ 13. Accordingly, "[a] court reviewing a trial court's refusal to submit to the jury a requested instruction must determine whether the trial court's decision constituted 'an abuse of discretion under the facts and circumstances of the case.'" *Juntunen* at ¶ 13, quoting *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

Under R.C. 2901.05(A) and (B)(1),

(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence presented as described in division (B)(1) of this section, is upon the accused.

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in

> self-defense, defense of another, or defense of that person's residence, as the case may be.

R.C. 2901.05(A), (B)(1). Under R.C. 2901.05(A) and (B)(1), a defendant claiming self-defense has the burden of production—that is, the burden of producing evidence that "tends to support" his use of force in defending himself. *State v. Davidson-Dixon*, 8th Dist. Cuyahoga No. 109557, 2021-Ohio-1485, ¶ 18; *State v. Sturgill*, 12th Dist. Clermont No. CA2020-03-018, 2020-Ohio-6665, ¶ 17; *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 7-8; *State v. Petway*, 11th Dist. Lake No. 2019-L-124, 2020-Ohio-3848, ¶ 55. If the defendant produces evidence that "tends to support" that he used force in self-defense, "[t]he burden then shifts to the state under its burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense." *Davidson-Dixon* at ¶ 18. Thus, "the burden of *proof* for the affirmative defense of self-defense has shifted to the state," but the "burden of *production* for * * * self-defense[] remains with the defendant." (Emphasis sic.) *State v. Messenger*, 10th Dist. Franklin No. 19AP-879, 2021-Ohio-2044, ¶ 44. *See State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, ¶ 25 ("a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self defense").

{¶23} "The reference in R.C. 2901.05(B)(1) to 'evidence presented that tends to support' self-defense indicates that the defendant's burden of production is

not a heavy one and that it might even be satisfied through the state's own evidence." *Messenger*, 2022-Ohio-4562, at ¶ 22, quoting R.C. 2901.05(B)(1).

**{¶24}** To determine whether a defendant satisfied his burden of production, the court must consider whether the evidence, from whatever source it may come, "tends to support" the defendant's use of force in self-defense if it "serve[s], contribute[s], or conduce[s] in some degree or way' to support that he used the force in self-defense * * *." *Petway* at ¶ 66, quoting TEND, *Black's Law Dictionary* (11th Ed.2019); *State v. Tolle*, 4th Dist. Adams No. 19CA1095, 2020-Ohio-935, ¶ 24. Stated differently, "evidence 'tends to support' that a defendant used force in self-defense, and a defendant is entitled to a jury instruction on the defense of self-defense under R.C. 2901.05 * * *, where the evidence in the record is sufficient to raise a question of reasonable doubt of guilt, based on a claim of self-defense, in the mind of a reasonable juror." *State v. Jacinto*, 8th Dist. Cuyahoga No. 108944, 2020-Ohio-3722, ¶ 49. "In deciding whether to give a self-defense instruction, the trial court must view the evidence in favor of the defendant, and the question of credibility is not to be considered." *Davidson-Dixon* at ¶ 20. Even so, "'[i]f the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the * * * defense, and submission of the issue to the jury will be unwarranted." *Tolle* at ¶ 23, quoting *State v. Melchior*, 56 Ohio St.2d 15, 20 (1978). "A defendant's bare assertion that he acted in self-defense will be insufficient." *State v. Palmer*, 12th Dist. Clermont No. CA2021-07-035, 2022-Ohio-2181, ¶ 18.

"Rather, the assertions must be coupled with supporting evidence from whatever source and of a nature and quality sufficient to raise reasonable doubt as to guilt." *Id.* "If the evidence adduced at trial is legally insufficient to raise the issue of self-defense, the court is not obligated to instruct the jury regarding this claim and has discretion to completely remove it from the jury's consideration." *State v. Barnd*, 85 Ohio App.3d 254, 259 (3d Dist.1993).

{¶25} "The elements of a self-defense claim differ based on whether the defendant employed deadly or non-deadly force to defend against their perceived assailant." *State v. Crowe*, 3d Dist. Allen No. 1-19-12, 2019-Ohio-3986, ¶ 15. There is no doubt that Dearmond employed deadly force by using a knife to stab Fuerst and Gamble. *State v. Horne*, 9th Dist. Summit No. 24348, 2009-Ohio-841, ¶ 10, quoting R.C. 2923.11(A) ("A knife constitutes a 'deadly weapon' if possessed, carried, or used as a weapon."); R.C. 2901.01(A)(2) (defining "deadly force" as "any force that carries a substantial risk that it will proximately result in the death of any person").

{¶26} "The elements for self-defense by use of deadly force are as follow: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he or she was in danger of death or great bodily harm and that the only way to escape was the use of force, and (3) the defendant did not violate any duty to retreat.'" *State v. Smith*, 3d Dist. Union No. 14-22-16, 2023-Ohio-3015, ¶ 32, quoting *State v. Barker*, 2d Dist. Montgomery No. 29227, 2022-Ohio-3756, ¶

22. "'All three of these elements must be present to establish self-defense.'" *State v. Zink*, 9th Dist. Lorain No. 21CA011813, 2023-Ohio-1250, ¶ 9, quoting *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 12, citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). "Furthermore, a person is privileged only to 'use as much force as is reasonably necessary to repel [an] attack.'" *Crowe* at ¶ 16, quoting *Shine-Johnson*, 2018-Ohio-3347, at ¶ 61. "The defense of self-defense is not available if the defendant used more force than was reasonably necessary and if the force used was greatly disproportionate to the apparent danger." *State v. Wright*, 6th Dist. Lucas No. L-16-1053, 2017-Ohio-1225, ¶ 28.

*Legal Analysis*

**{¶27}** After reviewing the record, we find that the evidence adduced at trial was legally insufficient to raise the issue of self-defense, and, accordingly, the trial court was not obligated to instruct the jury on self-defense. Specifically, Dearmond failed to establish that the evidence adduced at trial tends to support his use of force.

**{¶28}** With respect to the first element, Dearmond created the violent situation by bringing the knife to the marijuana transaction and continuing the escalating argument despite Fowler and Dyson's requests for their friends to abandon the transaction. Nonetheless, by his own admission, Dearmond continued to attempt to push the transaction to go through because his supply of marijuana was running low and he wanted to smoke marijuana with his friends. *See State v.*

*Canankamp*, 3d Dist. Auglaize No. 2-22-02, 2023-Ohio-43, ¶ 38 ("a person cannot provoke a fight or voluntarily enter combat and then claim self-defense").

**{¶29}** Furthermore, with respect to the second element, Dearmond did not establish that the use of the knife was his only means of escape. Most notably, Dearmond recognized that, at the time Fowler and Dyson were summoned to the vehicle, he could have abandoned the transaction and left. Yet, he consciously chose to continue the argument that was "not going anywhere" because he "didn't have that much weed and [he] wanted to go home and smoke." (Sept. 27-28, 2021 Tr. at 404).

**{¶30}** Additionally, Dearmond did not establish that the knife was necessary for his escape from the vehicle. Notably, Aldrete, who was not armed, exited the vehicle without the use of a knife. Furthermore, Gamble and Fuerst did not brandish any weapons. Moreover, Dearmond failed to establish that his use of the knife aided in his escape from the vehicle. Conversely, Dearmond testified that, while he stabbed Fuerst and Gamble, the car continued to speed up, and the vehicle was traveling at approximately 50 to 60 miles per hour when he exited the vehicle. *See State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 24.

**{¶31}** Moreover, Dearmond did not demonstrate his use of deadly force was reasonably necessary and proportionate to the apparent danger. Rather, Dearmond brought a knife to a drug transaction where the other parties were unarmed. Furthermore, Dearmond has failed to demonstrate that repeatedly stabbing Fuerst

and Gamble was proportionate to the apparent danger he was in, even as the vehicle drove away. *See James* at ¶ 25 ("At each step along the way, James could have (but chose not to) avoided the danger * * * instead, she brought a knife to a fist fight and seriously injured Houston."); *State v. Barker*, 2d Dist. Montgomery No. 29227, 2022-Ohio-3756, ¶ 71 ("If the force used was so disproportionate that it shows a purpose to injure, self-defense is unavailable.").

**{¶32}** Accordingly, because there was insufficient evidence to support Dearmond's requested jury instruction on self-defense, the trial court did not abuse its discretion in failing to give it. Dearmond's second assignment of error is overruled.

### *Conclusion*

**{¶33}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Logan County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and WALDICK, J., concur.**

**/hls**