DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, William Horne, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On October 4, 2007, Samuel Williams, Brandon Travis, Lateika Pearson, and Jasmine Blue drove to Club 631 in Akron. After parking the car, Williams and Travis exited the vehicle. Williams approached Horne and the two became engaged in an altercation. As a result of the altercation, Williams sustained a stab wound to his neck. Williams ran back to the car and told Pearson and Blue that Horne had stabbed him. Travis, Pearson, and Blue then drove Williams to the hospital for emergency medical attention.
 {¶ 3} On November 5, 2007, the grand jury indicted Horne on one count of felonious assault in violation of R.C. 2903.11(A)(1)/(A)(2). On April 14, 2008, a supplemental indictment was filed, charging Horne with carrying a concealed weapon, in violation of R.C. 2923.12(A)(1), *Page 2 
and driving under suspension, in violation of R.C. 4510.11. Horne pled guilty to the charges of carrying a concealed weapon and driving under suspension. The felonious assault charge proceeded to trial, and the jury found Horne guilty. The trial court sentenced Horne to a total of four and one-half years in prison and three years of post-release control. Horne now appeals from his conviction and raises three assignments of error for our review.
 II Assignment of Error Number One "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF APPELLANT'S 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 4} In his first assignment of error, Horne argues that his trial counsel was ineffective. Horne also argues that his counsel "was biased and fundamentally unfair throughout the trial process[.]" We disagree.
 {¶ 5} To prove an ineffective assistance claim, Horne must show that: (1) counsel's performance was deficient to the extent that "counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment [,]" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington (1984), 466 U.S. 668, 687. To demonstrate prejudice, Horne must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Strickland, 466 U.S. at 691. Furthermore, the Court need not address both Strickland prongs if an appellant fails to prove either one.State v. Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10. *Page 3 
 {¶ 6} Horne argues that his trial counsel was ineffective because: (1) he refused Horne's requests to have certain witnesses subpoenaed; and (2) he failed to make motions to have evidence "subjected to scientific scrutiny." He also argues that: (1) "none of the evidence admitted at trial *** was properly introduced or authenticated, nor could any of the items be tied directly to him;" and (2) his counsel's "bias and apparent prejudice towards him during the proceedings had a detrimental impact on the outcome of his trial." In Horne's appellate brief, his counsel notes the following:
 "The Appellant has written letters to Appellate Counsel indicating that trial counsel was deficient in several aspects. While the Appellant has failed to elaborate specifically on the depth of those deficiencies, Counsel included this assignment of error at the request of the Appellant so as not to waive any supplemental arguments or future claims."
Horne does not provide a single citation to the record in support of his arguments. An appellant bears the burden of formulating an argument on appeal and supporting that argument with citations to the record and to legal authority. See App. R. 16(A)(7). This Court will not create an argument on the behalf of an appellant. See Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8 ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Accordingly, Horne's first assignment of error is overruled.
 Assignment of Error Number Two "THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF FELONIOUS ASSAULT AND AS A RESULT THE APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."
 Assignment of Error Number Three "THE VERDICTS IN THIS CASE WERE AGAINST THE MANIFEST WEIGHT [OF THE] EVIDENCE AND AS A RESULT, APPELLANT'S RIGHTS AS PROTECTED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION *Page 4 
AND FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION WERE VIOLATED."
 {¶ 7} In his second assignment of error, Horne argues that his conviction for felonious assault is based on insufficient evidence. In his third assignment of error, Horne argues that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 8} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 274. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[S]ufficiency is required to take a case to the jury[.] *** Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Horne's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency. *Page 5 
 {¶ 9} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 10} R.C. 2903.11(A) provides, in relevant part, that:
 "No person shall knowingly do either of the following:
 "(1) Cause serious physical harm to another ***;
 "(2) Cause or attempt to cause physical harm to another *** by means of a deadly weapon or dangerous ordnance."
One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). A knife constitutes a "deadly weapon" if possessed, carried, or used as a weapon. State v. Deluzia, 9th Dist. No. 22528, 2005-Ohio-4660, at ¶ 22; R.C. 2923.11(A) (defining the phrase "deadly weapon"). *Page 6 
 {¶ 11} Horne argues that the jury erred in convicting him of felonious assault because Williams instigated the fight that occurred and Horne only injured Williams in self defense. Accordingly, Horne concedes that he had a knife and wielded it against Williams, but argues that he was justified in doing so.
 {¶ 12} Williams testified that he, Travis, Pearson, and Blue drove to Club 631 on North Howard Street in Akron. Pearson and Blue remained in the car while Williams and Travis exited and walked over to a group of people standing near Club 631. Williams testified that he saw Horne standing across the street and approached him. Williams admitted that he immediately accused Horne of beating his sister and asked Horne why he had done so. After his initial accusation, however, Williams only remembered Horne stabbing him, seeing blood flow from his neck, hurrying back to the parked car, and receiving a ride to the hospital. Williams testified that he did not have any sort of weapon with him at the time of the altercation.
 {¶ 13} Akron Police Officer Michael Orrand testified that he encountered Williams at St. Thomas Hospital on the day of the incident and spoke to Williams while he was being treated for a neck wound. Officer Orrand noted that Williams was "in and out of consciousness" during their conversation. Williams, however, was able to describe Horne and to tell Officer Orrand that Horne had stabbed him. Officer Orrand testified that he could see a trail of Williams's blood on the hospital floor extending from Williams's hospital bed, through the admissions area, and out through the emergency room entrance.
 {¶ 14} Pearson testified that she remained in the vehicle that she, Williams, Travis, and Blue took to Club 631 on the night in question. Pearson estimated that Williams and Travis were gone for approximately fifteen minutes before she saw somebody fighting in the middle of the street. Based on her position in the vehicle, Pearson was only able to see "a big guy in the *Page 7 
middle of the street swinging." Pearson testified that Williams then came back to the car looking as if he "was bleeding to death." Williams told Pearson and Blue that "Big Will" had stabbed him.
 {¶ 15} Blue, the other remaining passenger in the vehicle, testified that she was able to see Williams fighting from her position in the vehicle. Blue witnessed Horne pull Williams's shirt over his head and swing his arm at Williams. Blue also saw a knife in Horne's hand during the altercation. Blue testified that when Williams returned to the car his shirt was ripped open, he was bleeding excessively, and he stated that "Big Will just stabbed me."
 {¶ 16} Horne testified that Williams deliberately stopped near Club 631 on the night of the altercation because Williams had made eye contact with him from the vehicle in which Williams was riding. According to Horne, Williams immediately approached him and accused him of beating Williams's sister. Horne claimed that he tried to walk away from Williams because he thought that Williams was acting like he was "on some *** stuff," but Williams threatened to "who[o]p [his] a**." Horne further claimed that when he turned to walk away, Williams grabbed his arm and he felt his hand get cut. Although Horne did not know how he got cut or what cut him, he then pulled out his knife and started swinging with it in his hand. Horne admitted that he never saw Williams with a weapon. According to Horne, the fight ended shortly thereafter and he walked away from Williams. Horne testified that he never noticed any blood on Williams. During direct examination, Horne admitted that he previously had been convicted of aggravated assault as well as carrying a concealed weapon.
 {¶ 17} Tallmadge Police Officer Stephanie Jerin testified that she stopped the vehicle that Horne was driving on March 6, 2008 for a traffic violation. Officer Jerin proceeded to arrest Horne after discovering that he had a suspended license. Before removing Horne from the *Page 8 
vehicle, Officer Jerin testified that she asked Horne if he had any weapons. Horne responded in the affirmative and lifted his shirt to reveal a knife clip. Officer Jerin specified that Horne had a spring-loaded knife clipped on the inside of his jeans.
 {¶ 18} Based on our review of the record, we cannot conclude that the jury lost its way in convicting Horne of felonious assault. At the time of the incident, Williams was 18 years of age, 165 pounds, and approximately 5'7" to 5'8" tall. Horne was 31 years of age, 300 pounds, and 5'11" tall. The record reflects that Horne inflicted a serious injury upon Williams when Horne stabbed him in the neck with his knife. Even if Williams initiated the altercation, the record reflects that Williams did not have a weapon. Furthermore, two eyewitnesses to the crime, Pearson and Blue, testified that they only saw Horne "swinging" at Williams. While Horne severely injured Williams and caused him to bleed excessively, Horne claimed that he never saw Williams bleeding. Based on all of the foregoing, Horne's conviction for felonious assault is not against the manifest weight of the evidence.
 {¶ 19} Having disposed of Horne's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. Horne's second and third assignments of error lack merit.
 III {¶ 20} Horne's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 9 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 MOORE, P. J., DICKINSON, J., CONCUR. *Page 1