[Cite as *Calabrese Law Firm v. Christie*, 2024-Ohio-579.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THE CALABRESE LAW FIRM,      :

     Plaintiff-Appellee/      :
     Cross-Appellant,           No. 112736

                        :

     v.                        :

JOHN R. CHRISTIE,         :

     Defendant-Appellant/     :
     Cross-Appellee.        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
               AND REMANDED
**RELEASED AND JOURNALIZED:** February 15, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-918900

---

### *Appearances:*

Henderson, Schmidlin & McGarry Co., LPA, Timothy L. McGarry, and Brendan M. Mewhinney, *for appellee*.

Law Office of John R. Christie, LLC, and John R. Christie, *for appellant*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendant-appellant/cross-appellee John R. Christie ("Christie"), appeals from the trial court's judgments awarding plaintiff-appellee/cross-

appellant, the Calabrese Law Firm ("CLF"), $20,570.31 on CLF's breach-of- contract claim and $10,000 in attorney fees. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. Background and Procedural History

{¶ 2} The record reflects that CLF is a limited liability company that was formed by Anthony Calabrese ("Anthony") when he was a licensed attorney. Beginning in 2009, CLF leased space in One Cleveland Center in downtown Cleveland. In 2013, CLF needed to sign a new Master Lease with its landlord. Both Anthony and Christie were aware at that time that Anthony would soon be going to federal prison. The plan was for CLF to sign the Master Lease for eight offices, three to be used by Stefanik & Christie, L.L.C. ("Stefanik & Christie"), and five to be used by Calabrese & Associates, L.L.C. ("Calabrese & Associates"), a law firm formed by Anthony's wife, Maria Calabrese ("Maria").

{¶ 3} On June 11, 2013, CLF entered into a five-year sublease with Christie, Thomas Stefanik ("Stefanik"), and Stefanik & Christie for the use of the three offices. Christie and Stefanik each signed the sublease individually; Christie also signed the sublease on behalf of Stefanik & Christie.

{¶ 4} The sublease identified the amounts due under the sublease for monthly rent, as well as for the provision of various office services by CLF, which included, among other things, "a receptionist to answer phones lines." The sublease provided that CLF was a party to a Master Lease for the premises and that Stefanik & Christie would not cause the Master Lease to be defaulted. The sublease provided

that upon any default by Stefanik & Christie, CLF, upon giving written notice to Stefanik & Christie, could pursue any remedies available to it under Ohio law and could recover its reasonable attorney fees and any litigation costs, fees, and expenses.

{¶ 5} On Saturday, July 30, 2016, before the sublease term had expired, Christie emailed Maria and informed her that "an opportunity ha[d] presented itself that [was] too good for us to pass up" and that Stefanik & Christie was terminating the sublease. When Maria appeared at the office on Monday morning, Stefanik & Christie had vacated the office space. CLF then changed the locks and attempted to relet the space to other tenants but was unable to do so. It vacated the space two months later.

{¶ 6} On December 15, 2017, CLF filed suit against Christie, Stefanik, and Stefanik & Christie in the Lorain County Common Pleas Court, alleging breach of contract, unjust enrichment, conversion, and trespass. The case was transferred from Lorain County to the Cuyahoga County Common Pleas Court, where it was captioned *Calabrese Law Firm v. John R. Christie, et al.*, Cuyahoga C.P. No. CV-18-897790. Stefanik filed an answer to the complaint but quickly reached a settlement with CLF, who then dismissed its claims against Stefanik and Stefanik & Christie with prejudice. CLF dismissed its claims against Christie without prejudice.

{¶ 7} CLF subsequently refiled its claims against Christie in this case. The trial court denied Christie's motion to dismiss and for summary judgment, and the

case proceeded to trial. After opening statements, Christie moved for a directed verdict, which the court denied.

{¶ 8} CLF called seven witnesses at trial and moved eight exhibits into evidence. Christie did not call any witnesses nor move to admit any exhibits.

{¶ 9} Stacy Sustaric ("Sustaric") testified that she worked as the office manager for Calabrese & Associates from 2015 to 2020 and was in charge of collecting the rent due under the sublease from Stefanik & Christie and then paying the amount due under the Master Lease to the landlord. She said that she submitted the invoices for rent due under the sublease to Christie and that, although he initially paid the monthly rent, he eventually stopped paying. Both Sustaric and Anthony testified that as of July 1, 2016, Stefanik & Christie owed $23,277.78 under the sublease.

{¶ 10} Sustaric testified on cross-examination that she was aware while she was employed at Calabrese & Associates that Stefanik & Christie had done legal work for CLF and was claiming it was entitled to a rent credit because of CLF's unpaid bills for those legal services. Stefanik likewise testified that Christie told him several times that Stefanik & Christie had not been paid by CLF for its legal work and that Christie was offsetting CLF's unpaid invoices with Stefanik & Christie's rent payments.

{¶ 11} When Stefanik & Christie vacated the offices on July 31, 2016, there were two years remaining on the sublease. Maria testified that when she arrived at the office on Monday, August 1, 2016, Stefanik & Christie's space was completely

empty. Stefanik admitted that Stefanik & Christie left nothing behind when they vacated the space and that they had no intention of returning to the suite. Stefanik said they vacated the suite because he and Christie became partners with the law firm of Lewis Brisbois Bisgaard & Smith, L.L.P. ("LBBS"), which employment, as stipulated by the parties, was effective August 1, 2016.

{¶ 12} CLF called Christie at trial on cross-examination. Christie testified that he signed the sublease "on behalf of my law firm and on behalf of myself, yes sir." (Tr. 125.) He testified that Stefanik & Christie was entitled to "get out of the sublease" because CLF breached the sublease by not providing a receptionist to answer the phones. Maria admitted on cross-examination that the sublease required receptionist services to be provided and that although "a receptionist was provided in the beginning, in the end we did not have one, correct." (Tr. 154, 156.) Both she and Sustaric testified, however, that after the receptionist's employment was terminated, Sustaric would answer the phones and greet people coming into the office.

{¶ 13} Both Maria and Anthony testified that Christie never provided any formal notice to them that Stefanik & Christie would leave if the receptionist was not replaced. Anthony testified that Christie's August 1, 2016 email to him regarding Stefanik & Christie vacating the space was the first he heard that the law firm was moving out of the space, and the email did not mention the lack of a receptionist as a reason for terminating the sublease. Instead, the email stated, "As of August 1st, Tom, Mary Eileen and I have joined Lewis Brisbois. From our perspective, nothing

should change. It gives us more support and the chance to grow. The personal and professional opportunity is huge and too big to pass up for us and our families." Continuing, the email stated, "This came together very quickly and details and information are still being worked out."

{¶ 14} Anthony testified that Maria's law firm vacated the premises two months after Stefanik & Christie left because it could not pay the rent required by the Master Lease. CLF's exhibit No. 7 was a statement from Optima 1375 L.L.C., the landlord in the Master Lease, dated March 1, 2017, advising CLF that it owed $50,721.61 in rent and late fees to Optima. Anthony testified that although Optima had not yet filed a collection suit against CLF, "as far as he knows," Optima is still trying to collect these monies and that he regularly gets calls from collection specialists looking for payment. Although no more recent statements from Optima were submitted at trial, Anthony testified that CLF owes Optima "close to $200,000." (Tr. 233.)

{¶ 15} Before testimony recommenced after lunch on the first day of trial, Christie again moved for a directed verdict. He argued that the settlement agreement and release in an unrelated case between CLF and Anthony, on the one hand, and LBBS and Christie on the other, released him from any claims by CLF after August 1, 2016, and that he was therefore entitled to a directed verdict on CLF's claims. The trial court denied the motion, ruling that the settlement agreement

pertained only to legal services provided by Christie to CLF while he was an employee of LBBS and did not exclude CLF's claims in this case.[1]

{¶ 16} At the conclusion of trial, after Christie again moved for a directed verdict, CLF dismissed its claims for trespass and conversion. CLF also agreed that in light of its claim for breach of contract, it would not submit its claim for unjust enrichment to the jury. The trial court held its ruling on Christie's motion for directed verdict in abeyance and submitted the case to the jury, which awarded CLF $20,570.31.

{¶ 17} After trial, the parties submitted briefs regarding CLF's request for attorney fees and Christie's motion for directed verdict/judgment notwithstanding the verdict. The trial court subsequently denied Christie's motion and, after a hearing, awarded CLF $10,000 in attorney fees. The trial court also denied Christie's motion for a setoff of $9,000 to the verdict in light of CLF's earlier settlement with Stefanik.

{¶ 18} CLF then filed a motion for prejudgment interest. Christie filed a notice of appeal the next day, and a week later, CLF filed its notice of cross-appeal. The trial court subsequently issued an entry ruling that CLF's motion for prejudgment interest was moot in light of Christie's appeal; CLF then filed an amended notice of appeal to include the trial court's ruling regarding prejudgment interest.

---

[1] The settlement agreement was proffered under seal for the record.

## II. Law and Analysis

### A. Res Judicata

{¶ 19} In his first assignment of error, Christie argues that the trial court erred in denying his motion to dismiss, motion for summary judgment, and motion for directed verdict/judgment notwithstanding the verdict because CLF's claims are barred by the doctrine of res judicata.

{¶ 20} Initially, we note that Christie never raised the defense of res judicata in his motion for summary judgment and thus has waived any issue that the trial court improperly denied his summary judgment motion on that basis. *Arnoff v. PAJ Enters., L.L.C.*, 8th Dist. Cuyahoga No. 110714, 2022-Ohio-1759, ¶ 13 ("It is well established that arguments not raised below are waived for purposes of appeal.").

{¶ 21} Pursuant to Civ.R. 8(C), res judicata is an affirmative defense that must be pleaded in an answer to the complaint. Affirmative defenses other than those listed in Civ.R. 12(B) are waived if not raised in the pleadings or an amendment to the pleadings. *Jim's Steak House, Inc. v. Cleveland*, 81 Ohio St.3d 18, 688 N.E.2d 506 (1998). Christie did not plead res judicata in his answer to CLF's complaint and thus, would appear to have waived the defense. However, this court has held that res judicata may be raised for the first time in a motion for summary judgment, even when the defense is not raised in an answer. *E.B.F., Inc. v. 623 W. St. Clair Ave., L.L.C.*, 8th Dist. Cuyahoga No. 93587, 2010-Ohio-4005, ¶ 29. The defense of res judicata may not be raised by motion to dismiss pursuant to Civ.R. 12(B), however, because the defense must be proved with evidence outside the

pleadings. *Kobal v. Kobal*, 8th Dist. Cuyahoga No. 110317, 2022-Ohio-812, ¶ 10, citing *Commons v. Raaber*, 8th Dist. Cuyahoga No. 96867, 2011-Ohio-6084, ¶ 10, citing *State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107, 109, 579 N.E.2d 702 (1991).

{¶ 22} Because Christie argued in his motion to dismiss that res judicata barred CLF's claims, the trial court should have converted the motion to dismiss into a motion for summary judgment. *Kobal* at ¶ 13, citing *Hecht v. Equity Trust Co.*, 8th Dist. Cuyahoga Nos. 110380 and 110650, 2022-Ohio-198, ¶ 29 (where the determination of a motion to dismiss requires reference to materials outside the pleadings, the trial court should convert the motion to dismiss into a motion for summary judgment). It did not do so. Nevertheless, we find that the trial court properly denied Christie's motions to dismiss and for directed verdict/judgment notwithstanding the verdict because the doctrine of res judicata does not bar CLF's claims against Christie.

{¶ 23} Under the doctrine of res judicata, "'a valid final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 12, quoting *Kelm v. Kelm*, 92 Ohio St.3d 223, 227, 749 N.E.2d 299 (2001). The doctrine of res judicata applies to those who were parties in the prior action, to those who were in privity with the prior litigants, and also to those who could have joined the action and did not. *Wiggins Invest., Inc. v. Waterstreet Mgt., L.L.C.*, 8th Dist.

Cuyahoga No. 103820, 2016-Ohio-4869, ¶ 14, citing *Jarvis v. Wells Fargo Bank*, 7th Dist. Columbiana No. 09 CO 6, 2010-Ohio-3283.

{¶ 24} Christie contends that because the sublease at issue in this case is the same sublease at issue in the prior case and because he is "clearly a related party, in privity with the two resolved defendants," the dismissal with prejudice of Stefanik and Stefanik & Christie in the prior action is res judicata to CLF's action against him in this case. Christie's argument is without merit.

{¶ 25} As Christie acknowledged at trial, he signed the sublease both individually and on behalf of Stefanik & Christie. Accordingly, Christie's individual obligations on the sublease were independent from those of Stefanik and Stefanik & Christie. As stated in *Spicer v. James,* 21 Ohio App.3d 222, 487 N.E.2d 353 (2d Dist.1985), paragraph one of the syllabus:

> Generally, a party signing a contract as a corporate officer is not individually liable. However, in a lease agreement involving a corporate tenant, where the "body" of the lease agreement is in the singular and refers solely to "the tenant" or to the corporation by name, but the lease agreement is signed by two corporate officers twice, first individually and then in the corporate capacities, then the corporate officers are liable individually on the lease.

{¶ 26} As an individual signer on the sublease, Christie was not in privity with either Stefanik or Stefanik & Christie such that CLF's claims against him are barred by res judicata. "The Ohio Supreme Court has recognized that 'what constitutes privity, in the context of res judicata is somewhat amorphous.'" *Wiggins*, 8th Dist. Cuyahoga No. 103820, 2016-Ohio-4869, at ¶ 15, quoting *Brown v. Dayton*, 89 Ohio St.3d 245, 248, 730 N.E.2d 958 (2000). Accordingly,

the court has "applied a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine." *Wiggins* at *id.*, quoting *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8. Thus, "'a mutuality of interest, including an identity of desired result, may create privity.'" *Id.*, quoting *id.* Mutuality only exists, however, "'if the person taking advantage of the judgment would have been bound by it had the result been the opposite.'" *Wiggins* at *id.*, quoting *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 9.

{¶ 27} There is no question that Christie would not have been personally liable for a judgment rendered against Stefanik & Christie in the prior action based upon his ownership of the firm. Nor would Christie have been personally liable for a judgment against Stefanik, who also signed the sublease in his individual capacity. Accordingly, Christie was not in privity with Stefanik as his law partner nor with Stefanik & Christie as its owner such that CLF's dismissal with prejudice of Stefanik and Stefanik & Christie in the prior case was res judicata to CLF's claims against Christie in this case.

{¶ 28} Christie's reliance on *Teichman v. Tripodo*, 8th Dist. Cuyahoga No. 57419, 1990 Ohio App. LEXIS 3900 (Sept. 6, 1990), is unavailing. In *Teichman*, the plaintiff sued a company for breach of a construction contract. The case was settled and dismissed with prejudice. The plaintiff then sued the president of the company for breach of the same contract. This court affirmed the trial court's grant of summary judgment to the defendant, finding that the president of the company had

signed the construction contract in his corporate capacity and not as an individual. *Id.* at 4. Accordingly, this court concluded that the president was not a party to the contract and not individually liable on it. *Id.*

{¶ 29} Christie contends that *Teichman* supports his claim that he was in privity with Stefanik & Christie because this court also found in *Teichman* that as president and principal stockholder of the company, the president was in privity with the company, and res judicata therefore barred the plaintiff from raising the same claim against the president in a subsequent action that was settled in the prior action. *Id.* But Christie fails to acknowledge the significant distinction between this case and *Teichman.* In *Teichman*, there was no question that the company president signed the contract *only* in his corporate capacity, unlike this case, where Christie signed the sublease *both* as an owner of Stefanik & Christie and in his individual capacity.

{¶ 30} Res judicata precludes a party from relitigating issues already decided by a court. *Stebbins Plumbing & Heating Co. v. Pragalos*, 2d Dist. Montgomery No. 25701, 2013-Ohio-4949, ¶ 11. Because the issue of Christie's individual liability on the sublease was not decided in the prior action and Christie was not in privity with Stefanik or Stefanik & Christie, res judicata does not bar CLF's claims against Christie in this case. The first assignment of error is overruled.

**B. CLF — A Limited Liability Company**

{¶ 31} In his motions for summary judgment and directed verdict/judgment notwithstanding the verdict, Christie argued that CLF's claims against him should

be dismissed because CLF is an illegal entity and accordingly, cannot prosecute its claims against him. The trial court denied both motions. In his second assignment of error, Christie contends that the trial court erred in allowing CLF to pursue its claims against him because although CLF calls itself a law firm, it is solely owned and controlled by a nonlawyer and is practicing law without a license. Therefore, he contends, "CLF cannot pursue claims, given its ongoing illegal existence."

{¶ 32} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate. Under Civ.R. 56(C), summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only a conclusion that is adverse to the nonmoving party.

{¶ 33} Under Civ.R. 50(A)(4), a court may properly grant a motion for directed verdict when, after construing the evidence most strongly in favor of the party against whom the motion is directed, it finds that reasonable minds could come to but one conclusion on a determinative issue, and the conclusion is adverse to the nonmoving party. In reviewing the grant or denial of a motion for judgment notwithstanding the verdict made after all the evidence is presented at trial, a reviewing court applies the same test as that applied in reviewing a motion for a directed verdict. *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App.3d 183, 2002-

Ohio-6803, 783 N.E.2d 920, ¶ 14 (8th Dist.). Review of the grant or denial of a motion for directed verdict is de novo. *Id.* We find no error in the trial court's denial of Christie's motions for summary judgment and directed verdict/judgment notwithstanding the verdict with respect to CLF's alleged status as an illegal entity.

{¶ 34} The record demonstrates that CLF is and always has been an Ohio limited liability company solely owned by Anthony, who was a licensed attorney when the company was formed. Under Ohio law, it is permissible to establish a law firm as a limited liability company rather than a professional association. R.C. 1785.09. As a limited liability company, CLF could enter into the Master Lease and the sublease and sue for any violation of same. *See Hook v. Kimble*, 7th Dist. Harrison No. 14 HA 0, 2015-Ohio-2110, ¶ 21 (a limited liability company has statutory authority to enter into contracts); R.C. 1705.03(A).[2]

{¶ 35} Even though Anthony can no longer practice law, there is nothing preventing him from owning a limited liability company. And although Christie contends that CLF lost its ability to bring its claims when Anthony lost his license to practice law, he cites to no authority for this argument. None of the claims at issue in this suit relate to the practice of law, and the record reflects that CLF no longer practices law. Because CLF had the statutory authority to enter into the sublease

---

[2] R.C. 1705.03(A) was in effect when CLF entered into the Master Lease and sublease and when it filed suit to enforce the sublease. R.C. Chapter 1705, Ohio's Limited Liability Companies Law, was repealed and replaced effective February 2022 with R.C. Chapter 1706, Ohio's Revised Limited Liability Company Act. The result is the same under either version. *See* R.C. 1706.05 (a limited liability company has the power, among other things, to contract and to sue and be sued).

and to enforce it, there was no genuine issue of fact regarding CLF's right to prosecute its claims against Christie under the sublease, and the trial court properly denied Christie's motion for summary judgment made on this basis. Likewise, the trial court properly denied his motion for directed verdict/judgment notwithstanding the verdict. The second assignment of error is overruled.

## C. Settlement and Release in an Unrelated Lawsuit

{¶ 36} On August 18, 2022, CLF and Anthony entered into a settlement agreement with LBBS and Christie in a separate, unrelated lawsuit. The settlement agreement stated that "[t]his settlement agreement is entered into following a dispute between plaintiffs and defendant relating to legal representation and services provided to plaintiffs by Christie while he was an employee of LBBS between August 1, 2016 and January 15, 2021." The agreement released and discharged Christie "from any and all past, present and future claims, demands obligations, actions, causes of action * * * in any way arising out of, * * * involving, or relating to the legal services and representation provided by Christie while an employee of LBBS between August 1, 2016, and January 15, 2021 * * *."

{¶ 37} In his third assignment of error, Christie contends that the "plain language" of the settlement agreement and release "states that claims against Christie are released" and, accordingly, the trial court erred in denying his oral motion for a directed verdict in this case. Christie's argument is specious.

{¶ 38} The plain language of the settlement agreement and release states that CLF released any and all claims against Christie that it had relating to legal

services Christie provided to CLF from August 1, 2016, and January 15, 2021, while he was an employee of LBBS. The agreement is expressly limited to Christie's provision of legal services to CLF; it does not relate in any way to the sublease at issue in this case. The third assignment of error is overruled.

### D. Manifest Weight of the Evidence

{¶ 39} CLF's breach of contract claim was the only claim submitted to the jury. To prevail on a breach-of-contract claim, a plaintiff must demonstrate that a binding contract or agreement was formed; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of that breach. *Garafalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995).

{¶ 40} The trial court correctly instructed the jury on the elements of a breach-of-contract claim. (Tr. 347.) After deliberation, the jury returned a verdict in favor of CLF in the amount of $20,570.31. In his fourth assignment of error, Christie contends that the jury verdict was against the manifest weight of the evidence because CLF breached the sublease.

{¶ 41} When conducting a manifest-weight review, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *ABV Corp. v. Cantor*, 8th Dist.

Cuyahoga No. 112237, 2023-Ohio-3363, ¶ 8, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In determining whether the judgment is against the manifest weight of the evidence, a reviewing court should make "every reasonable presumption in favor of the judgment and the finding of facts." *Eastley* at *id.* If the evidence is susceptible of more than one construction, we must give it the interpretation that is consistent with the verdict and judgment and most favorable to sustaining the trial court's verdict and judgment. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶ 42} Moreover, in a civil case, the burden of proof is by a preponderance of the evidence, rather than beyond a reasonable doubt. *Eastley* at ¶ 19. Preponderance of the evidence means "the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence." *Croone v. Arif*, 8th Dist. Cuyahoga No. 101103, 2014-Ohio-5546, ¶ 18, citing *State v. Stumpf*, 32 Ohio St.3d 95, 102, 512 N.E.2d 598 (1987).

{¶ 43} Christie first contends that CLF breached the sublease by not providing a person with the title of "receptionist" to answer the phones. The evidence at trial demonstrated that the receptionist was not replaced after her employment was terminated. However, there was also evidence that Sustaric took on the receptionist's duties after the receptionist was let go and that she would answer the phones and greet visitors to the office. Thus, the jury could have reasonably concluded that CLF did not breach the sublease because it provided

someone to act as a receptionist, even though that person did not have the title of "receptionist." "The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not sufficient to breach the contract." *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922), paragraph two of the syllabus.

{¶ 44} Christie also contends that CLF breached the sublease because it never gave formal notice to Stefanik & Christie that it was in breach of the sublease for not timely paying rent, as required by the sublease. This argument is without merit. CLF would have needed to provide notice of default and an opportunity to cure only if it intended to terminate the sublease for Stefanik & Christie's failure to timely pay rent. But the undisputed evidence demonstrates that Christie, not CLF, terminated the sublease and moved out early.

{¶ 45} Finally, Christie contends that CLF breached the sublease by changing the locks to the office suite after Stefanik & Christie vacated the office suite. This argument is likewise without merit. Maria testified that Stefanik & Christie moved out of the offices over a weekend and when she returned to the office on Monday, Stefanik & Christie's space was completely empty. Christie's law partner, Stefanik, testified that Stefanik & Christie left nothing behind when they vacated the space because they had no intention of returning to the suite. In light of this evidence, the jury could have reasonably found that CLF's changing the locks after Stefanik & Christie vacated the space was not a breach of the sublease.

{¶ 46} Upon weighing the evidence and all reasonable inferences therefrom, and considering the credibility of the witnesses and resolving any conflicts in the evidence, we find that the jury did not lose its way nor create a manifest miscarriage of justice in finding that Christie, and not CLF, breached the sublease. The fourth assignment of error is overruled.

### E. Hearsay Testimony

{¶ 47} In his fifth assignment of error, Christie contends that the trial court improperly admitted hearsay testimony by Maria and Anthony.

{¶ 48} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Evid.R. 802 generally deems hearsay inadmissible unless the evidence falls under a specific exception to the hearsay prohibition. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 87.

{¶ 49} Christie contends that Anthony's testimony was hearsay because he was in prison during the relevant time period and thus had no firsthand knowledge of what took place at the leasehold. He contends that Maria admitted that she was not at the office all day, every day, during working hours and, therefore, her testimony about what happened at the office was likewise improper hearsay. Christie's argument has no merit.

{¶ 50} Under App.R. 16(D), regarding appellate briefs, "[i]f reference is made to evidence, the admissibility of which is in controversy, reference shall be

made to the pages of the transcript at which the evidence was identified, offered, and received or rejected." The only references Christie makes to the trial transcript with respect to his hearsay argument are to pages 229-231 regarding Anthony's alleged hearsay testimony, and to pages 150-151 of the transcript regarding Maria's testimony. Pages 229-231 are part of Christie's cross-examination of Anthony. At no point on these pages does Christie move to strike as hearsay any of part of Anthony's testimony, and our reading of these pages does not reveal any hearsay. Likewise, pages 150-151 of the transcript are part of Christie's cross-examination of Maria, and at no point does Christie ask the court to exclude her testimony as hearsay.

{¶ 51} Because Christie made no objection below on the cited pages to either Anthony's or Maria's testimony, he has waived any argument on appeal that the testimony on those pages was improper hearsay. *Arnoff*, 8th Dist. Cuyahoga No. 110714, 2022-Ohio-1769 at ¶ 13. Furthermore, although Christie contends that Anthony made hearsay assertions "throughout his testimony" and that Maria's testimony was generally hearsay, it is not this court's duty to search the record to determine whether Christie preserved the alleged hearsay issue for appellate review. *See State v. Horne,* 9th Dist. Summit No. 24348, 2009-Ohio-841, ¶ 6. The appellant has the burden of demonstrating error on appeal by reference to the record of the trial court proceedings. *Tisco Trading USA, Inc. v. Cleveland Metal Exch., Ltd.*, 8th Dist. Cuyahoga No. 97446, 2012-Ohio-1646, ¶ 6. Because Christie waived any argument on appeal with respect to the transcript pages cited in his brief and has

not supported his argument about any other alleged hearsay testimony with citations to the record, we overrule this assignment of error.

**F. Damages**

{¶ 52} Christie next contends that the jury's verdict was improper because CLF did not present any evidence of actual damages resulting from Christie's breach of the sublease.

{¶ 53} "When reviewing the sufficiency of the evidence in civil cases, the question is whether, after viewing the evidence in a light most favorable to the prevailing party, the judgment is supported by competent, credible evidence." *Alpert v. UPS of Am., Inc.*, 8th Dist. Cuyahoga No. 103163, 2016-Ohio-1541, ¶ 41. In other words, "the standard is whether the verdict is one which could be reasonably reached from the evidence. When engaging in this analysis, an appellate court must remember that the weight and credibility of the evidence are better determined by the trier of fact." *Id.*

{¶ 54} CLF presented sufficient evidence at trial of damages that it sustained as a result of Christie's nonpayment of rent for the time Stefanik & Christie occupied the office suite. Both Sustaric and Anthony testified that as of July 1, 2016, Christie owed $23,277.78 under the sublease. Plaintiff's exhibit No. 3, a copy of an invoice from CLF to Christie and Stefanik & Christie dated June 27, 2016, reflected a balance due of that amount. Plaintiff's exhibit No. 7, an invoice from Optima 1375 to CLF dated March 1, 2017, demonstrated that CLF continued to pay the rent due on the Master Lease until October 1, 2016, even after Stefanik & Christie had vacated the

office suite before the sublease term was over. This evidence was sufficient to demonstrate that CLF sustained damages as a result of Stefanik & Christie's nonpayment of rent.

{¶ 55} Christie contends that CLF failed to demonstrate any actual damages, however, because Optima 1375 has not yet sued CLF for its unpaid rent under the Master Lease. Anthony testified, however, that he receives calls from bill collectors trying to collect monies due under the Master Lease. Furthermore, the evidence demonstrated that until October 1, 2016, CLF paid rent to Optima 1375 for the space that Stefanik & Christie occupied, despite Stefanik & Christie's nonpayment to CLF of its portion of the rent due under the sublease. Thus, it is apparent that CLF suffered damages as a result of Stefanik & Christie's breach of the sublease. The sixth assignment of error is overruled.

### G. Attorney Fees

{¶ 56} Prior to trial, Christie agreed that any determination regarding attorney fees would be made by the trial judge.

> DEFENSE COUNSEL: We had talked about the issue of attorneys' fees. I think everybody is actually onboard that those should not be handled by the jury, but handled by you afterwards. I just want to make sure that, again, so we'll —
>
> THE COURT: Are you onboard with that?
>
> MR. CHRISTIE: I think the law says that, I mean, assuming we get to that point, that the court holds its own hearing on it.

(Tr. 3.) He now contends, however, that the trial court improperly awarded CLF $10,000 in attorney fees because CLF did not submit interrogatories to the jury to determine if the jury believed an award of attorney fees was proper.

{¶ 57} Christie's argument that CLF waived its claim to attorney fees by not presenting the issue to the jury is contradicted by his agreement on the record that the court would conduct a hearing after trial regarding attorney fees, "assuming we get to that point." *Id.* It is also contradicted by the law.

{¶ 58} Ohio adheres to the "American rule" with respect to recovery of attorney fees; each party is responsible for its own attorney fees. *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. One exception to this rule is that attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees. *Id.*, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702 (1987).

{¶ 59} The decision whether to award attorney fees and how much rests within the trial court's discretion. *Woodside Mgmt. Co. v. Bruex*, 2020-Ohio-4039, 157 N.E.2d 295, ¶ 136 (9th Dist.), citing *Motorists Mut. Ins. Co. v. Brandenburg*, 72 Ohio St.3d 157, 648 N.E.2d 488 (1995), syllabus. However, the issue of whether a statute or contract provides for an award of attorney fees requires interpretation of the statute or contract, which is reviewed de novo. *Id.*

{¶ 60} Our de novo review demonstrates that the sublease expressly provided that in the event of default by Christie, CLF could pursue all rights and

remedies available to it under Ohio law and could recover its "reasonable attorney fees" from Christie. The jury rendered a verdict in favor of CLF, apparently finding that Stefanik & Christie breached the sublease.[3] Accordingly, pursuant to the contract executed by the parties, the trial court did not abuse its discretion in finding that CLF was entitled to recover its reasonable attorney fees. The seventh assignment of error is overruled.

### H. Setoff to the Jury Award

{¶ 61} Finally, Christie contends that the trial court erred in denying his motion for a $9,000 setoff to the jury award in light of Stefanik's settlement with CLF. We agree, and although CLF does not address this assignment of error in its appellate brief, it apparently does too.

{¶ 62} The record reflects that throughout the trial court proceedings, CLF repeatedly acknowledged that Christie would be entitled to a $9,000 setoff should CLF prevail at trial. *See* CLF's Motion for Partial Summary Judgment (setting forth amounts due as damages and deducting $9,000 as "setoff for payment"); CLF's brief in support of its motion in limine regarding legal arguments ("CLF does not dispute that Christie is entitled to a setoff as to the $9,000 paid by Stefanik."); and CLF's brief in opposition to Christie's motion to compel ("Plaintiff agrees that pursuant to

---

[3] Christie's argument that attorney fees are not warranted because "we do not know if the award is based on contract claims or unjust enrichment claims" is bewildering. It is apparent that the only claim decided by the jury was CLF's breach-of-contract claim.

Ohio R.C. 2307.28 Christie is entitled to the setoff. * * * The court will simply deduct the $9,000 payment from any award made by the jury.").

{¶ 63} R.C. 2307.28 relates to setoffs and apportionment among tortfeasors and thus does not apply to this case, which involved only a claim for breach of contract. Nevertheless, Christie is entitled to a setoff of $9,000, the amount of damages that Stefanik (who was jointly and severally liable to CLF for the obligations under the sublease) paid CLF to settle claims related to breach of the sublease. The eighth assignment of error is sustained.

## III. CLF's Cross-Appeal

### A. Did the Jury Correctly Calculate Damages?

{¶ 64} In its first cross-assignment of error, CLF contends that the jury incorrectly calculated the damage award. CLF asserts that because the jury apparently found that Christie had breached the sublease, it should have awarded CLF $190,699.62 in damages, the amount it asked for at trial, which included $23,277.78 in past due rent as of July 1, 2016, $49,077.36 in rent owed by Stefanik & Christie for year four of the sublease, $49,560.24 in rent for year five of the sublease, and $77,784.24 as damages accrued by CLF under the Master Lease.[4] We decline to find that the jury award was against the manifest weight of the evidence.

---

[4] These were the amounts set forth as damages in CLF's exhibit No. 8. Notably, the sum of these amounts is $199,699.62, not $190,699.62 as represented on the exhibit as the sum of the damages, another indication that CLF recognized that the $9,000 setoff is appropriate.

{¶ 65} Anthony testified that CLF moved out of the office space two months after Stefanik & Christie moved out, and that CLF notified Optima that it was moving out in the hope that the landlord would be able to relet the space. CLF's exhibit No. 7, an invoice from Optima to CLF dated March 1, 2017, demonstrates that as of that date, CLF owed Optima $50,721.61 in unpaid rent and late fees. Curiously, CLF did not produce any other invoices from Optima. In light of Anthony's testimony, and the lack of any invoices from Optima after March 1, 2017, the jury could have reasonably concluded that Optima was able to relet the space at some point and was no longer pursuing CLF after March 1, 2017, for further rent payments under the Master Lease. Furthermore, exhibit No. 7 demonstrates that CLF stopped paying rent under the Master Lease after October 1, 2016, when it moved out of the space. Although Anthony testified that "as far as he knows," Optima is still trying to collect the monies due, he acknowledged that as of the time of trial, some six years after CLF vacated the space, Optima had never filed a collection suit against CLF.

{¶ 66} In light of this evidence and our duty under the civil manifest-weight-of-the-evidence standard to make every reasonable presumption in favor of the judgment and findings of fact, we conclude that CLF did not demonstrate by the manifest weight of the evidence that it owed Optima $77,784.24 under the Master Lease as a result of Stefanik & Christie's breach of the sublease. Further, because CLF stopped paying rent under the Master Lease after October 1, 2016, and Anthony acknowledged that Optima had never filed a collection action, the jury could have

reasonably concluded that Christie was not liable for years four and five of the sublease.

{¶ 67} It is admittedly unclear how the jury reached its award of $20,570.32. Nevertheless, although Anthony testified that he was unaware of any credit setoffs, and there was no testimony regarding the amount or date of the alleged credit setoffs, there was testimony at trial by Sustaric and Stefanik suggesting that CLF had not paid Stefanik & Christie for legal services, and that Christie was offsetting CLF's unpaid invoices with Stefanik & Christie's rent payments. In light of this testimony, the jury could have reasonably concluded that Christie was not liable for the entire $23,277.78 in unpaid rent that Sustaric and Anthony testified was owed as of July 1, 2016. CLF's first cross-assignment of error is therefore overruled.

## B. Attorney Fees

{¶ 68} In its second cross-assignment of error, CLF contends that the trial court erred in awarding only $10,000 in attorney fees.

{¶ 69} We review a trial court's decision regarding an award of attorney fees for an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). "'Abuse of discretion' is a term of art, describing a judgment neither comporting with the record nor reason." *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97085, 2012-Ohio-3354, ¶ 12, citing *State v. Ferranto*, 112 Ohio St. 667, 676-677, 148 N.E. 362 (1925). "'A decision is unreasonable if there is no sound reasoning process that would support that

decision.'" *Klayman* at *id.*, quoting *AAAA Ent. Inc. v. River Place Comm. Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 70} "In determining the appropriate attorney fee award, Ohio courts, like federal district courts, 'are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply do 'rough justice.'" *Chapel v. Wheeler Growth Co.*, 1st Dist. Hamilton No. C-220662, 2023-Ohio-3988, ¶ 20, quoting *Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir.2016).

{¶ 71} The baseline for calculating the prevailing party's attorney fees is known as the "lodestar," which is calculated by multiplying the number of hours reasonably worked times the hourly rates of the attorneys and their staff who worked those hours. *Bittner* at 145. Under *Bittner*, after first calculating the lodestar amount, trial courts could then modify that calculation based on the factors listed in Prof.Cond.R. 1.5(a). However, in *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.,* 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, the Ohio Supreme Court modified *Bittner* "to the extent that it could be viewed as allowing enhancements to the lodestar as a matter of course." *Id*. at ¶ 20. The Supreme Court found in *Phoenix* that "nearly all" of the Prof.Cond.R. 1.5(a) factors "are included as part of the hourly fee used to calculate the lodestar," *id*. at ¶ 16, and thus, "are subsumed within the lodestar; they do not enhance the lodestar." *Id*. at ¶ 17. Accordingly, the court found that "there is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked * * * is the proper amount for

an attorney-fee award." *Id.* at ¶ 19. "The presumption in favor of the lodestar amount and the limits on deviating from it apply whether the appellate court is reviewing a trial court's upward or downward deviation." *Chapel* at ¶ 21, citing *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2021-Ohio-1171, 171 N.E.3d 790, ¶ 38 (10th Dist.) Nevertheless, "[a] trial court has discretion to modify the presumptive calculation of an attorney-fee award — the reasonable hourly rate multiplied by the number of hours worked — but any modification must be accompanied by a rationale justifying the modification." *Id.* at ¶ 20.

{¶ 72} In its motion for attorney fees, CLF presented its lodestar calculation of $72,630. In support of its motion, CLF provided the affidavit of its lead counsel identifying the hours worked on the case (260.5) and the reasonable hourly rates of the professionals who performed the work. The trial court held a hearing on CLF's motion. CLF's lead counsel on the case testified at the hearing regarding the reasonableness of the fees; he also acknowledged that the law firm had a 40 percent contingency fee agreement with CLF. After the hearing, the trial court issued a judgment stating:

> Pursuant to authority in *Benton Village Condo. Owners Assn. v. Bridge*, [8th Dist. Cuyahoga No. 106892,] 2018-Ohio-4896; *Abbott v. Marshalls of MA, Inc.*, [8th Dist. Cuyahoga No. 87860,] 2007-Ohio-1146; *Julian v. Creekside Health Ctr.*, [7th Dist. Mahoning No. 03 MA 21,] 2004-Ohio-3197, and after having applied the factors found within these cases, and after having considered the contingency fee agreement between plaintiff and its counsel in determining attorney fees, this court finds that $10,000 is reasonable in an award of attorney fees to plaintiff from defendant.

{¶ 73} CLF concedes that the trial court was allowed to use the contingency fee agreement to reduce the attorney fee award but contends that the trial court's judgment was in error because "the trial court did not explain its rationale for reducing the 'reasonable' hourly rate for LF's professionals to $38.46/hour." (Appellant's brief, p. 27-28.) We disagree.

{¶ 74} The trial court's judgment entry adequately explained that it was modifying the lodestar because CLF had agreed to a 40 percent contingency fee arrangement. No further explanation or calculation was required. The trial court could properly consider the contingency fee agreement in modifying the lodestar because the lodestar (hourly rate multiplied by the number of hours worked) would not take this factor into account. *See Phoenix*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, at ¶ 19 (lodestar may be adjusted when there is specific evidence that adjustment is necessary to account for a factor not subsumed in the lodestar calculation).

{¶ 75} We find no abuse of discretion in the trial court's award of attorney fees. Forty percent of the jury's $20,570.31 verdict is $8,228.12, but the trial court increased this amount to $10,000, apparently in recognition that the contingency agreement did not adequately compensate CLF for the significant time it expended on this case. CLF's second cross-assignment of error is overruled.

## C. Prejudgment Interest

{¶ 76} After the jury verdict, CLF filed a motion for prejudgment interest. Christie filed a notice of appeal the next day, and a week later, CLF filed a notice of

cross-appeal.[5] The trial court subsequently issued an entry ruling that CLF's motion was rendered moot by the appeal and cross-appeal. Because the trial court ruled on the motion during the pendency of the appeal, to ensure that the court had jurisdiction to enter its order, this court remanded the matter to the trial court under App.R. 4(B)(2) for the court to reenter judgment on CLF's motion for prejudgment interest. Upon remand, the trial court again ruled that the motion was moot.

{¶ 77} In its third cross-assignment of error, CLF contends that the trial court erred in ruling that its motion was moot because an award of prejudgment interest on a successful breach-of-contract claim is mandatory. We agree. *See Waina v. Abdallah*, 8th Dist. Cuyahoga No. 86629, 2006-Ohio-2090, ¶ 39 (where a party has been granted judgment on an underlying contract claim, that party is entitled to prejudgment interest as a matter of law). The jury found for CLF on its breach-of-contract claim. Thus, upon remand by this court, the trial court should have reconsidered its ruling denying the motion as moot and granted CLF's motion for prejudgment interest.

{¶ 78} Because we have affirmed the trial court's judgment in favor of CLF on its breach-of-contract claim, it is apparent that CLF is entitled to prejudgment

---

[5] Christie could have waited to file his notice of appeal until after the trial court ruled on CLF's motion for prejudgment interest. Under App.R. 4(B)(2)(f), upon the filing of a post-judgment motion for prejudgment interest, the time for filing a notice of appeal begins to run as to all parties when the trial court enters an order resolving the post-judgment filing. Under App.R. 4(B)(2), if a party files a notice of appeal before the trial court has ruled on a post-judgment motion for prejudgment interest, the appellate court shall stay the proceedings and remand the matter to the trial court to resolve the motion.

interest on its claim.  Accordingly, upon remand, the trial court is instructed to issue an order granting CLF's motion.  The third cross-assignment of error is sustained.

{¶ 79} Judgment is affirmed in part and reversed in part, and case remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
SEAN C. GALLAGHER, J., CONCUR